Citation Nr: 1450473 
Decision Date: 11/14/14 Archive Date: 11/26/14

DOCKET NO. 12-22 369 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cheyenne, Wyoming


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a stomach disability, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

2. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a skin disability, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

3. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a disability characterized by leg pain, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

4. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a cognitive disability (claimed as memory loss), to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

5. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a dental disability, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

6. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD) and depression.

7. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for coronary artery disease, to include as due to exposure to environmental hazards.

8. Entitlement to service connection for a stomach disability, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

9. Entitlement to service connection for a skin disability, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

10. Entitlement to service connection for a disability characterized by leg pain, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

11. Entitlement to service connection for a cognitive disability (claimed as memory loss), to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

12. Entitlement to service connection for a dental disability, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

13. Entitlement to service connection for an acquired psychiatric disability, to include PTSD and depression.

14. Entitlement to service connection for coronary artery disease, to include as due to exposure to environmental hazards.

15. Entitlement to service connection for fatigue, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

16. Entitlement to service connection for deep vein thrombosis, to include as due to exposure to environmental hazards.

17. Entitlement to service connection for peripheral vascular disease, to include as due to exposure to environmental hazards.

18. Entitlement to service connection for a disability characterized by shakiness, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards.

19. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

M. M. Olson, Associate Counsel
INTRODUCTION

The Veteran served on active duty from August 1957 to May 1962 and from July 1991 to December 1991, to include service in the Persian Gulf, and with additional service in the National Guard.

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in June 2009, June 2011, and April 2013 by the Department of Veterans Affairs (VA) Regional Office (RO) in Cheyenne, Wyoming. 

The Board notes that the Veteran's claims of entitlement to service connection for deep vein thrombosis and peripheral vascular disease were originally denied in a November 1999 rating decision. However, there was a significant change in the law on November 9, 2000, when the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000) (codified as amended at 38 U.S.C.A. § 5100 et seq.) became law. This statute redefined the obligations of VA with respect to the duty to assist and included an enhanced duty to notify a claimant as to the information and evidence necessary to substantiate a claim for VA benefits. The change in the law was applicable to all claims filed on or after the date of enactment of the VCAA, or filed before the date of enactment and not yet final as of that date. VCAA, § 7(a), 114 Stat. at 2099-2100; see also Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). 

The VCAA also eliminated the concept of a well-grounded claim and superseded the decision of the United States Court of Appeals for Veterans Claims in Morton v. West, 12 Vet. App. 477 (1999), withdrawn sub nom. Morton v. Gober, 14 Vet. App. 174 (2000) (per curiam order), which had held that VA could not assist in the development of a claim that was not well grounded. Section 7(b) of the VCAA states that, in the case of a claim for benefits finally denied as being not well grounded between July 14, 1999, and November 9, 2000, the claim can be re-adjudicated upon the request of the claimant or the Secretary's own motion as if the denial had not been made. In the November 1999 rating decision, the RO denied these two claims based on a determination that the claims were not well grounded. Therefore, the denial of the claims meets the criteria of section 7(b), and these claims do not require the receipt of new and material evidence for adjudication on the merits.

In January 2004, the Board remanded the Veteran's claim of entitlement to service connection for fatigue. The claim has been returned to the Board for further appellate review.

In September 2014, the Veteran testified before the undersigned Veterans Law Judge at a video conference hearing. A transcript of that hearing is associated with the record. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issues of entitlement to service connection for a stomach disability; entitlement to service connection for a skin disability; entitlement to service connection for a disability characterized by leg pain; entitlement to service connection for a cognitive disability; entitlement to service connection for a dental disability; entitlement to service connection for an acquired psychiatric disability; entitlement to service connection for coronary artery disease; entitlement to service connection for fatigue; entitlement to service connection for deep vein thrombosis; entitlement to service connection for peripheral vascular disease; entitlement to service connection for a disability characterized by shakiness; and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction.


FINDINGS OF FACT

1. In a November 1999 rating decision, the RO denied entitlement to service connection for coronary artery disease, the Veteran did not appeal that decision in a timely manner, and no new and material evidence was submitted within the appeal period.

2. Evidence received since the time of the final November 1999 rating decision raises the reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for coronary artery disease, to include as due to exposure to environmental hazards.

3. In a January 2004 decision, the Board denied entitlement to service connection for a stomach disability, a skin disability, a disability characterized by leg pain, a cognitive disability, a dental disability, and an acquired psychiatric disability, and the Veteran did not appeal that decision.

4. Evidence received since the time of the final January 2004 Board decision raises the reasonable possibility of substantiating the Veteran's claims of entitlement to service connection for a stomach disability, a skin disability, a disability characterized by leg pain, a cognitive disability, a dental disability, and an acquired psychiatric disability.


CONCLUSIONS OF LAW

1. The November 1999 rating decision is final. 38 U.S.C.A. § 7105(c) (West 1991); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (1999); currently, 38 U.S.C.A. § 7105(c) (West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2014).

2. Evidence submitted to reopen the claim of entitlement to service connection for coronary artery disease, to include as due to exposure to environmental hazards, is new and material, and the claim is reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2002); 38 C.F.R. § 3.156 (2014).

3. The January 2004 Board decision is final. 38 U.S.C.A § 7104(b) (West 2002); 38 C.F.R. § 20.1100 (2003); currently, 38 U.S.C.A. § 7104(b) (West 2002); 38 C.F.R. § 20.1100 (2014).

4. Evidence submitted to reopen the claims of entitlement to service connection for a stomach disability, a skin disability, a disability characterized by leg pain, a cognitive disability, a dental disability, and an acquired psychiatric disability is new and material, and therefore, the claims are reopened. 38 U.S.C.A. §§ 5108, 7104 (West 2002); 38 C.F.R. §§ 3.156, 20.302, 20.1103 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In this decision, the Board grants the claims to reopen the issues of entitlement to service connection for coronary artery disease, a stomach disability, a skin disability, a disability characterized by leg pain, a cognitive disability, a dental disability, and an acquired psychiatric disability. Therefore, no discussion of VA's duty to notify or assist is necessary.

New and Material Evidence 

Pertinent procedural regulations provide that "[n]othing in [38 U.S.C.A. § 5103A] shall be construed to require [VA] to reopen a claim that has been disallowed except when new and material evidence is presented or secured, as described in [38 U.S.C.A. § 5108]." 38 U.S.C.A. § 5103A(f) (West 2002). Reopening a claim for service connection which has been previously and finally disallowed requires that new and material evidence be presented or secured since the last final disallowance of the claim. 38 U.S.C.A. § 5108 (West 2002); Evans v. Brown, 9 Vet. App. 273, 285 (1996); see also Graves v. Brown, 8 Vet. App. 522, 524 (1996). New evidence means existing evidence not previously submitted to VA. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

In Hodge v. West, 155 F.3d 1356, 1363 (Fed. Cir. 1998), the United States Court of Appeals for the Federal Circuit noted that new evidence could be sufficient to reopen a claim if it could contribute to a more complete picture of the circumstances surrounding the origin of a claimant's injury or disability, even where it would not be enough to convince the Board to grant a claim. In determining whether evidence is new and material, the credibility of the evidence is generally presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992). In Elkins v. West, 12 Vet. App. 209 (1999), the Court held the Board must first determine whether the claimant has presented new and material evidence under 38 C.F.R. § 3.156(a) in order to have a finally denied claim reopened under 38 U.S.C.A. § 5108. Then, if new and material evidence has been submitted, the Board may proceed to evaluate the merits of the claim, but only after ensuring that VA's duty to assist has been fulfilled. See Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999). The Court recently held that the law should be interpreted to enable reopening of a claim, rather than to preclude it. See Shade v. Shinseki, 24 Vet. App. 110 (2010). 

Even if no appeal is filed, a rating decision is not final if new and material evidence is submitted within the appeal period and has not yet been considered by VA. 38 C.F.R. § 3.156(b); Bond v. Shinseki , 659 F.3d 1362 (Fed. Cir. 2011). 

Coronary Artery Disease

Here, the Veteran did not submit any new and material evidence within the year following the November 1999 rating decision, nor did he file a timely appeal to the rating decision. Therefore, the November 1999 rating decision final. 38 U.S.C.A. 
§ 7105(c); 38 C.F.R. §§ 3.104, 20.302, 20.1103; currently, 38 U.S.C.A. § 7105(c); 38 C.F.R. §§ 3.104, 20.302, 20.1103.

As the November 1999 rating decision is the last final disallowance with respect to the claim, the Board must review all of the evidence submitted since then to determine whether the Veteran's claim of entitlement to service connection for coronary artery disease should be reopened and re-adjudicated on a de novo basis. In the November 1999 rating decision, the RO denied the Veteran's claim because the medical evidence did not demonstrate that the Veteran's pre-existing heart disease was permanently aggravated beyond its normal progression. Thus, in order for the Veteran's claim to be reopened, new evidence must have been added to the record since the November 1999 rating decision that addresses this basis.

Evidence received since the November 1999 rating decision includes VA treatment records, private treatment records, and lay evidence. Notably, a November 2008 myocardial perfusion scan revealed a decreased activity throughout the left lateral wall involving the lateral posterior aspect ventricle with 20 percent reperfusion on resting, which the private physician believed was fixed disease as well as some potentially reversible ischemia. A December 2008 private treatment record reflects a finding of occlusion of multiple grafts and occluded native vessels, and an additional record shows an assessment of end-stage coronary artery disease. In addition, an October 2009 private treatment record shows private physicians increased the Veteran's medication for his coronary artery disease.

Upon review, the Board finds this evidence is both new and material evidence sufficient to reopen the Veteran's claim. The evidence is new as it had not been previously considered by VA. In addition, the evidence is "material" because it relates to an unestablished fact necessary to substantiate the underlying service connection claim. Namely, it raises the possibility that the Veteran's coronary artery disease has been permanently aggravated by active duty. Therefore, the Board finds the evidence raises a reasonably possibility of substantiating the Veteran's claim. 38 C.F.R. § 3.156(a). As the credibility of new evidence is generally presumed, the Veteran's claim of entitlement to service connection for coronary artery disease, to include as due to exposure to environmental hazards, is reopened. Justus, 3 Vet. App. at 512-13.

Stomach Disability, Skin Disability, Leg Pain, Cognitive Disability, Dental Disability, Acquired Psychiatric Disability

Here, the Veteran did not submit any new and material evidence with respect to these issues within the year following the January 2004 Board decision, nor did he file a timely appeal to the Board decision. Therefore, the Board decision is final. 38 U.S.C.A § 7104(b) (West 2002); 38 C.F.R. § 20.1100 (2003); currently, 38 U.S.C.A. § 7104(b) (West 2002); 38 C.F.R. § 20.1100 (2014). As the January 2004 decision is the last final disallowance with respect to these claims, the Board must review all of the evidence submitted since then to determine whether the Veteran's claims should be reopened and re-adjudicated on a de novo basis. In the January 2004 decision, the Board denied the Veteran's claims of entitlement to service connection for a stomach disability and a dental disability because the Veteran's complaints had been attributed to clinical diagnoses, and the probative, competent evidence did not demonstrate that the Veteran's pre-existing, diagnosed disabilities were permanently aggravated beyond their normal progression by active duty. With respect to the Veteran's claims of entitlement to service connection for a skin disability, a disability characterized by leg pain, a cognitive disability, and an acquired psychiatric disability, the Board denied the Veteran's claims because the Veteran's complaints had been attributed to clinical diagnoses, and the probative, competent evidence did not demonstrate that the diagnosed disabilities were related to active duty. Thus, in order for the Veteran's claims to be reopened, new evidence must have been added to the record since the January 2004 decision that addresses these bases.

Evidence received since the January 2004 decision includes VA treatment records, private treatment records, and lay evidence. Here, the Board finds the Veteran's testimony at the September 2014 hearing is both new and material evidence sufficient to reopen the Veteran's claims. The evidence is new as it had not been previously considered by VA. In addition, the evidence is "material" because it relates to an unestablished fact necessary to substantiate the underlying service connection claims. Namely, the Veteran's testimony raises the possibility that his stomach disability and dental disability were permanently aggravated by active duty. In addition, the Veteran's statements indicate that a skin disability, a disability characterized by leg pain, a cognitive disability, and an acquired psychiatric disability are related to his active duty service. Therefore, the Board finds the evidence raises a reasonably possibility of substantiating the Veteran's claims. 38 C.F.R. § 3.156(a). As the credibility of new evidence is generally presumed, the Veteran's claims of entitlement to service connection for a stomach disability, a skin disability, a disability characterized by leg pain, a cognitive disability, a dental disability, and an acquired psychiatric disability are reopened. Justus, 3 Vet. App. at 512-13.




ORDER

New and material evidence having been submitted, the claim of entitlement to service connection for coronary artery disease, to include as due to environmental hazards, is reopened, and to that extent, the appeal is granted.

New and material evidence having been submitted, the claims of entitlement to service connection for a stomach disability, a skin disability, a disability characterized by leg pain, a cognitive disability, a dental disability, and an acquired psychiatric disability are reopened, and to that extent, the appeal is granted.


REMAND

Remand is warranted for new VA examinations to determine whether the Veteran has any current disabilities related to active service. 38 U.S.C.A. §§ 5107(a), 5103A (West 2002); 38 C.F.R. § 3.159 (2014). With respect to the Veteran's claims concerning coronary artery disease, a stomach disability, a dental disability, leg pain, deep vein thrombosis, and peripheral vascular disease, treatment records indicate the Veteran had a history of these conditions prior to his entrance into his second period of active duty. In addition, private treatment records and the Veteran's lay testimony indicate that any pre-existing conditions may have been permanently aggravated by active duty. Further, private treatment records dated subsequent to active duty reflect diagnoses of deep vein thrombosis and peripheral vascular disease and relate the Veteran's symptoms of leg pain to these diagnoses. As such, the Board finds remand for a VA examination and opinion are necessary to determine whether coronary artery disease, a stomach disability, a dental disability, deep vein thrombosis and/or peripheral vascular disease clearly and unmistakably pre-existed active duty and were not permanently aggravated by active duty or a period of active duty for training, or are otherwise related to a period of active duty if they did not pre-exist active duty. Here, the Board notes that the Veteran's claim regarding leg pain appears intertwined with his diagnoses of deep vein thrombosis and peripheral vascular disease. See 38 U.S.C.A. § 2307 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.1600(a), (b) (2014). Therefore, this issue is also remanded to the RO. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (where a claim is inextricably intertwined with another claim, the claims must be adjudicated together in order to enter a final decision on the matter). 

Additionally, the record reflects the Veteran's complaints of fatigue, skin rashes, difficulty with memory, and shakiness during the pendency of the appeal. As the Veteran asserts these symptoms are related to a chronic multi-symptom illness, the Board finds these claims are intertwined. Further, the Veteran's service personnel records document his service in the Persian Gulf and indicate that he was exposed to smoke from oil fires, diesel and/or other petrochemical fuel, and personal pesticides. As a result, the Board finds that remand for a VA examination and opinion is warranted in order to ascertain whether any symptoms of fatigue, skin rashes, memory problems, and/or shakiness are etiologically related to active duty, to include as due to an undiagnosed illness or other qualifying chronic disability, and to include as due to exposure to environmental hazards. 38 U.S.C.A. 
§ 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006).

With respect to the Veteran's claim of entitlement to service connection for an acquired psychiatric disability, treatment records dated since separation from service reflect diagnoses of depression and PTSD. In December 1997, a VA examiner associated the Veteran's depression with three recent major life changes, and in December 1997, a private neurologist concluded that there was not a probable causal relationship between the Veteran's complaints and his Persian Gulf service. In addition, a July 1998 VA examiner opined that the Veteran's depression could be secondary to chronic alcohol abuse. However, based on the new and material evidence submitted since the January 2004 decision, the Board finds additional VA examination is necessary to determine the nature and etiology of any acquired psychiatric disability. 38 U.S.C.A. §§ 5103A, 5107(a); 38 C.F.R. § 3.159. 

Additionally, as it appears the Veteran receives continuous treatment through VA, the RO should obtain any outstanding VA treatment records dated from December 2010 to the present from the VA Medical Center in Cheyenne, Wyoming, and any associated outpatient clinics. 

TDIU

Finally, the Board finds the claim of entitlement to a TDIU is inextricably intertwined with the claims remanded herein. See 38 U.S.C.A. § 2307; 38 C.F.R. §§ 3.1600(a), (b). Therefore, this issue is also remanded to the RO. See Harris, 1 Vet. App. at 183. 

Accordingly, the case is REMANDED for the following actions:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain and associate with the record all treatment records dated from December 2010 to the present for the Veteran from the VA Medical Center in Cheyenne, Wyoming, along with records from any associated outpatient clinics. To the extent that an attempt to obtain any of these records is unsuccessful, the claims file must contain documentation of the attempts made, and the Veteran and his representative must be informed of the negative results.

2. Schedule the Veteran for a VA examination for the purpose of ascertaining the nature and etiology of any stomach disability, skin disability, disability characterized by leg pain, cognitive disability, dental disability, coronary artery disease, deep vein thrombosis, peripheral vascular disease, fatigue, and disability characterized by shakiness. The electronic file, a copy of this Remand, and a clear record of the Veteran's periods of active duty and active duty for training should be made available to the examiner in conjunction with the examination. Any medically indicated tests should be accomplished, and all pertinent symptomatology and findings must be reported in detail. 

Based on the physical examination and review of the record, to include the Veteran's service and post-service treatment records, and with consideration of the Veteran's statements regarding his symptoms prior to, during, and since service, the examiner should provide an opinion as to whether it is clear and unmistakable (obvious and manifest) that any coronary artery disease, stomach disability, and/or dental disability that pre-existed active duty was not aggravated during a period of active duty or active duty for training beyond the natural progression of the disease. The examiner should identify the evidence upon which any opinion is based.

In addition, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that any deep vein thrombosis or peripheral vascular disease is related to a period of active duty, to include exposure to environmental hazards. In this respect, the examiner should comment on the Veteran's service personnel records, which indicate that he was exposed to smoke from oil fires, diesel and/or other petrochemical fuel, and personal pesticides. 

If, and only if, the examiner is of the opinion that deep vein thrombosis and peripheral vascular disease are not "at least as likely as not" related to a period of active duty, then the examiner should provide an opinion as to whether it is clear and unmistakable (obvious and manifest) that any deep vein thrombosis and/or peripheral vascular disease pre-existed any period of active duty service. If it is found that a condition pre-existed a period of active duty, the examiner should specify which period of active duty and identify the evidence upon which this opinion is based. The examiner should also provide an opinion as to whether it is clear and unmistakable (obvious and manifest) that a pre-existing disability, if found, was not aggravated during a period of active duty or active duty for training, and the examiner should identify the evidence upon which this opinion is based. 

Aggravation is defined as a permanent worsening beyond the naturally progression of the disease or disability. A complete rationale should be provided for any opinion or conclusion expressed.

The examiner should also provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that a skin disability, cognitive disability, fatigue, and/or disability characterized by leg pain or shakiness is related to active duty, to include as due to exposure to environmental hazards. The examiner should note the Veteran's service personnel records that indicate he was exposed to smoke from oil fires, diesel and/or other petrochemical fuel, and personal pesticides. 

For any of the above signs and symptoms which are not attributable to a known diagnosis, the findings should reflect all objective indications of chronic disability to include either objective medical evidence perceptible to a physician or other non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(2) (2014). In other words, if not attributable to a known clinical diagnosis, the examiner is asked to express an opinion as to whether the signs or symptoms claimed are attributable to an undiagnosed illness.

In formulating the opinions, the term "at least as likely as not" does not mean "within the realm of possibility." Rather, it means that the weight of the medical evidence both for and against the claim is so evenly divided that it is as medically sound to find in favor of the claim as it is to find against it.

A complete rationale should be provided for any opinion or conclusion expressed.

3. Schedule the Veteran for a VA examination for the purpose of ascertaining the nature and etiology of any acquired psychiatric disability, to include PTSD and depression. The electronic file and a copy of this Remand should be made available to the examiner in conjunction with the examination. Any medically indicated tests should be accomplished, and all pertinent symptomatology and findings must be reported in detail. 

Based on a review of the record, to include the service treatment records, VA treatment records and examination reports, and lay testimony, the examiner should render any relevant diagnoses pertaining to an acquired psychiatric disability. The examiner should then provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that any acquired psychiatric disability is related to the Veteran's active duty service. 

In providing the requested opinion, the examiner is advised that the term "at least as likely as not" does not mean within the realm of possibility. Rather, it means that the weight of medical evidence both for and against a conclusion is so evenly divided that it is medically sound to find in favor of causation as to find against causation. 

A complete rationale should be provided for any opinion or conclusion expressed.

4. Then, re-adjudicate the remanded claims. If any benefit sought on appeal remains denied, provide the Veteran and his representative a Supplemental Statement of the Case and an appropriate period of time in which to respond. Then, return the appeal to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs